(No. 5270— )

MITCHELL LEWINSKI, ADMINISTRATOR OF THE ESTATE OF WALTER GENZA, DECEASED, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed June 13, 1967.*

GEORGE J. LEWIS and LAWRENCE W. BLICKHAN, Attorneys for Claimant.

WILLIAM G. CLARK, Attorney General; LEE D. MARTIN, Assistant Attorney General, for Respondent.

PERLIN, C.J.

Claimant seeks recovery of $25,000.00 as Administrator of the Estate of Walter Genza who died as a result of injuries, which were suffered on December 7, 1965 while he was a patient at the Soldiers' and Sailors' Home, which was operated by respondent. Claimant alleges several acts of negligence on the part of respondent, which he claims caused decedent's death, including the following:

Walter Genza was a resident and patient in the infirmary at the Illinois Soldiers' and Sailors' Home when on December 7, 1965 he was taken by agents and employees of respondent to the shower room and left unattended, and, while taking a shower, he was severely burned and scalded; that respondent provided the deceased with a shower without a proper water and temperature regulator; maintained its water temperature at

a dangerous and unsafe level; failed to warn the deceased of the dangerous and unsafe temperature of the water; and, failed to provide the proper protection to the deceased when it knew, or in the exercise of reasonable care should have known, that the facilities were unsafe and dangerous.

The record shows that on the date of the accident Genza had been a patient at the institution for about four months, and that as a result of a stroke, which left him paralyzed on the right side, he was unable to walk or talk, and could stand only with difficulty. He was fifty-one years old at the time of his death.

On December 7, 1965 the deceased was taken to the shower room in his wheel chair by attendant Robert Cook, who undressed him, and placed him under running water in the shower on a chair. Cook claims to have tested the water. The shower room was under the supervision of Sally Schanz, a registered nurse. Cook and George Hardy, both of whom had worked at the Home for many years, were present at the time of the incident. Sally Shanz testified that the rules and regulations required that an attendant be present at all times while a paralyzed patient was receiving a shower. Cook stated that after placing Genza under the shower he washed his back and head, and then went to attend another patient about five or six feet from the shower with a tub between the attendant and the deceased. Cook had asked the deceased if he wanted to get out, and he had indicated he did not. Two minutes later, as Cook was getting another man out of the tub, he heard Genza shout, and saw from the indicator on the shower handle that the hot water had been turned on from its original setting. Cook stated that the same shower had been there

at least seventeen years. Hardy testified that at the time of the accident three patients were being bathed by the two attendants. It is undisputed that Genza died two days later from burns resulting from the scalding suffered by him on December 7, 1965.

The Chief Engineer of plant maintenance, Perry Mann, testified that he was in charge of plumbing and steamfitting at the institution, and that the power plant located in the building in which the decedent was burned had its own hot water source with a water heater, which controlled all the water facilities in the infirmary. On the day of the accident the gauge on the hot water heater read 171 degrees F., but actually tested at 158 to 159 degrees F. The gauge had not been regulated for at least two and one-half years. Mann testified that the temperature was kept at a high rate because it also regulated the water used for washing dishes, which required about 180 degrees F. Around the time of the accident or shortly thereafter the dishwashing facilities were abandoned because the food was being served from another kitchen, and the dishes were washed there.

No notice of the temperature of the water used in the shower in which the deceased was scalded was given by Mann or any of the employees under his supervision to any of the attendants at the infirmary. The witness stated that 110 degrees degrees F. is hot enough for use in a shower room.

The witness further testified that no booster was used to raise the temperature in the dishwasher, although this would have allowed the same facilities to service both shower room and kitchen safely. There was no Powers regulator on the shower used by Genza, although this piece of equipment, which controls the water coming

through the shower at a desired temperature, would have prevented anyone from being scalded.

Mann stated frankly: "Any time we are putting out water hot enough that someone can be scalded we are at fault."

Respondent's contention that the deceased was contributorily negligent is without merit. The deceased was paralyzed, and unable to walk or talk. Nurse Shanz stated that his mental condition was poor. Reasonable care would require constant supervision in the shower room, since he obviously could not be responsible for his own actions.

Respondent was grossly negligent in the instant case in not only failing to provide the type of supervision required for one so helpless, but in providing water facilities, which it knew, or should have known, were inherently dangerous, and a threat to the lives of anyone using them. Respondent could not explain its failure to utilize the devices of a dishwasher booster and a Powers regulator, which would have served all purposes.

Mrs. Genza, the widow of the deceased, testified that they were married on October 8, 1953, and had no children. The deceased had suffered a stroke approximately two and one-half years after they were married, leaving him unable to walk or talk. He had been in and out of the hospital during the ten years after he had the stroke, and the majority of time was spent at home with Mrs. Genza. The decedent received $78.00 per month from Social Security benefits, and $135.40 from the Veterans Administration, which payments were discontinued after his death. The funeral bill was $546.24, and the widow received $500.00 in insurance money.

It appears that the benefits, which were received from Social Security and the Veterans Administration during the lifetime of the decedent, were largely used for his maintenance. There was no evidence with regard to decedent's future prospects, although it may be inferred that they were poor. However, if an action for death is brought for the benefit of a surviving wife, the law presumes substantial damages from the fact of death alone. (I.L.P., Death, Sec. 30)

Therefore, claimant is awarded the sum of $7,500.00.