(No. 5632— ▇▇▇▇▇▇▇▇▇▇

NESTOR NIEVES, Administrator of the Estate of Elsie Nieves, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed August 3, 1979.*

FRANK E. O'REILLY and EDWARD J. BRADLEY, both for Claimant.

WILLIAM J. SCOTT, Attorney General (SAUL R. WEXLER, Special Assistant Attorney General, of counsel), for Respondent.

POCH, J.

This is an action brought by Nestor Nieves as administrator of the estate of Elsie Nieves, deceased, to

recover $25,000.00 damages for the alleged wrongful death of the Claimant's decedent on January 6, 1968.

On December 26, 1968, at about 8:05 p.m., she voluntarily entered Elgin State Hospital. She had previously been in mental institutions four times.

On the fifth occasion, the admitting physician's diagnosis was as follows:

"A 40 year old white female, married, Catholic, had three previous admissions at Elgin State Hospital ° ° °. On this fourth occasion she comes in anxious, quite restless, but answers questions with elusiveness, appears hostile, unmanageable at home where she fights with husband. Effect inappropriate, poor insight as well as judgment, fairly oriented to all three spheres, schizophrenic reaction, chronic undifferentiated type."

She was taken by an attendant to a room on the second floor. There were two psychiatric aides on duty, who were in charge of from 30 to 32 patients. Once on the floor, she manifested peculiar behavior by crawling under beds, but was not placed in restraints. Later that same night, she walked into another patient's room twice and tried to take this patient's clothes. The incident was reported to an aide who returned Mrs. Nieves to her own bed.

The aide thought it was necessary to watch Mrs. Nieves because the aide did not want her to go into other rooms where she might molest the other patients or try to take their clothes. The aide was also concerned because there was another patient on the ward who would fight.

A short time later, Mrs. Nieves was given permission to be in the hallway for a few minutes. This was the last time that anyone saw her for the next 15 minutes. Sometime during this period, Mrs. Nieves walked 75 to 100 feet to the end of the hallway and jumped or fell from the second story window onto the frozen ground. The window was not locked, barred or secured in any way; it was just an ordinary window. She was observed

lying on the ground at about 12:05 a.m. only four hours after she had been admitted and died as a result 11 days later.

Claimant has charged that Respondent was negligent in the operation of the building where Mrs. Nieves was placed; for failure to keep her under proper surveillance; and also for failure to provide adequately secured windows, which would have prevented the incident.

Although the State "in operating a mental institution is not an insurer * * *", *Callbeck v. State of Illinois* (1956), 22 Ill. Ct. Cl. 722, the State does owe patients the duty of reasonable care. *Karulski v. Board of Trustees* (1966), Ill. Ct. Cl. 295.

In the instant case, both expert witnesses for the Claimant testified that the hospital failed to meet the standard of care required and that the normal precautions were not taken. They also testified that Mrs. Nieves should have either been placed in restraints, or placed in a locked ward under constant supervision because her condition presented a "very tense, tricky and dangerous situation".

Dr. Tuteur, a psychiatrist and the clinical director at Elgin State Hospital, testified for the Respondent that although restraints were not necessary, Mrs. Nieves should have been admitted to a closed ward, even though her symptoms did not show that she was a danger to herself or to others. He also testified that the symptoms which a patient displays should control the type of ward in which he should be admitted. Yet, at the time in question, the geographical location of a patient's residence and not the symptoms a patient displayed, was the controlling factor in placing a patient in a locked ward or open ward. Dr. Tuteur was not able to explain why she was not admitted to a locked ward.

Dr. Tuteur further testified that there should have been more than two aides on duty that night, but that budgetary considerations prevented hiring more aides.

In view of the foregoing, we find that the Respondent was negligent and that said negligence was the proximate cause of Mrs. Nieves' death. The coroner determined the cause of death to be a cerebral embolism, resulting from the numerous injuries which she sustained from the fall. Dr. Rios, Director of the Medical and Surgical Services at the hospital, and Drs. Foldman and Ziporyn, expert witnesses for the Claimant, were also of the same opinion.

Respondent's contention that Mrs. Neives was contributorily negligent is without merit. A mentally ill patient can not be charged with the same degree of care for his own safety as a mentally competent person. (*Nickolic v. State of Illinois* (1965), 25 Ill. Ct. Cl. 333.) The pathetic and confused behavior exhibited by Mrs. Nieves shows that little could have been expected of her in caring for her own safety. Hence, Mrs. Nieves was not guilty of contributory negligence.

The last point to consider is whether Claimant is entitled to the amount prayed for. Mrs. Nieves was married in 1952 and had three minor children at the time of her death. The record indicates that during her 16½ years of married life, Mrs. Nieves spent 11 years at home caring for her family. During this time she did the housework, and made clothes for the family, tended a garden, drove the children to and from school, and kept the family financial records. If these services were to be performed by someone else, they would cost a considerable sum of money. Moreover, if a wrongful death action is brought for the benefit of a surviving spouse and children, the law presumes substantial damages from the fact of death alone. *Lewinski v. State of Illinois* (1967), 26 Ill. Ct. Cl. 166.

Wherefore, Claimant is awarded the sum of $25,000.00.